## Minors Employed by Railroads

RUTHERFORD, Deputy Attorney General, October 28, 1943.—This department is in receipt of your communi-

cation requesting advice as to whether the Pennsylvania Child Labor Law is applicable to minors between the ages of 16 and 18 years of age who may be employed by interstate railroads.

The Child Labor Law of May 13, 1915, P. L. 286, as last amended by the Act of May 21, 1943, P. L. 409, 43 PS §§41 et seq., provides for the health, safety, and welfare of minors by forbidding their employment or work in certain establishments and occupations, and under certain specified ages, and by restricting their hours of labor and regulating the conditions of their employment.

Section 4 of the Pennsylvania Child Labor Law, as amended, provides for the following restrictions on hours of labor of minors under 18 years of age:

"No minor under eighteen years of age shall be employed or permitted to work in, about, or in connection with any establishment, or in any occupation, for more than six consecutive days in any one week, or more than forty-four hours in any one week, or more than eight hours in any one day: Provided, That during the present existing state of war between the United States and certain foreign countries and six months thereafter, upon application of an employer to the Secretary of Labor and Industry, with the approval of the Industrial Board, minors between the ages of sixteen and eighteen years shall be permitted to work forty-eight hours in any one week, but not to exceed ten hours in any one day nor more than six consecutive days in any one week, provided such employment is directly or indirectly in furtherance of the war effort: And provided further, That messenger boys employed by telegraph companies at offices where only one such minor is employed as a messenger in which case such minor shall not be employed for more than six consecutive days in any one week, or more than fifty-one hours in any one week, or more than nine hours in any one day. . . .

"No minor under eighteen years of age shall be employed or permitted to work for more than five hours continuously in, about, or in connection with, any establishment without an interval of at least thirty minutes for a lunch period and no period of less than thirty minutes shall be deemed to interrupt a continuous period of work."

Section 5 of said Child Labor Law, as amended by the Act of July 19, 1935, P. L. 1335, prohibits certain types of employment to minors under 18 years of age as follows:

"No minor under eighteen years of age shall be employed or permitted to work in the operation or management of hoisting machines, in oiling or cleaning machinery, in motion; in the operation or use of any polishing- or buffing-wheel; at switch-tending, at gate-tending, at track-repairing; as a brakeman, fireman, engineer, or motorman or conductor, upon a railroad or railway; as a pilot, fireman, or engineer upon any boat or vessel; in the manufacture of paints, colors or white lead in any capacity; in preparing compositions in which dangerous leads or acids are used; in the manufacture or use of dangerous or poisonous dyes; in any dangerous occupation in or about any mine; nor in or about any establishment wherein gunpowder, nitroglycerine, dynamite, or other high or dangerous explosive, is manufactured or compounded.

"No minor under eighteen years of age shall be employed or permitted to work in, about, or in connection with, any establishment where alcoholic liquors are distilled, rectified, compounded, brewed, manufactured, bottled, sold, or dispensed; nor in a public bowling alley; nor in a pool or billiard room.

"No minor shall be employed or permitted to serve or handle alcoholic liquor in any establishment where alcoholic liquors are sold or dispensed; nor be employed or permitted to work in violation of the laws relating to the operation of motor vehicles by minors.

"In addition to the foregoing, it shall be unlawful for any minor under eighteen years of age to be employed or permitted to work in any occupation dangerous to the life or limb, or injurious to the health or morals, of the said minor, as such occupations shall, from time to time, after public hearing thereon, be determined and declared by the Industrial Board of the Department of Labor and Industry: Provided, That if it should be hereafter held by the courts of this Commonwealth that the power herein sought to be granted to the said board is for any reason invalid, such holding shall not be taken in any case to affect or impair the remaining provisions of this section."

The State, under its police power, has the unquestioned authority to impose restrictions and regulations as to hours and working conditions designed for the care and protection of its minors. The authority of the State in the absence of Federal legislation to enact laws in the exercise of its police power for the purpose of establishing such reasonable regulations as are appropriate for the protection of the health and safety of its citizens is no longer open to question even though such legislation may affect interstate commerce. See New York, New Haven & Hartford R. R. Co. v. New York, 165 U. S. 628 (1897).

However, if and when Congress enacts legislation upon the subject of hours of labor of employes of railroads engaged in interstate commerce, the power of the State to regulate such hours is subordinated to the Federal power, and if there is a conflict between the State and Federal legislation, the former must yield to the latter. See Erie R. R. Co. v. New York, 233 U. S. 671 (1914), where the court said (p. 683):

"We realize the strength of these observations, but they put out of view, we think, the ground of decision of the cases, and, indeed, *the necessary condition of the supremacy of the congressional power. It is not that*

*there may be division of the field of regulation, but an exclusive occupation of it when Congress manifests a purpose to enter it."* (Italics supplied.)

It is necessary, therefore, to consider whether Congress has enacted such legislation as to manifest a definite purpose to exercise its constitutional authority and regulate the hours and working conditions of minors employed by interstate carriers.

Though Congress has enacted no legislation expressly regulating the hours and working conditions of minors employed by interstate carriers, it is suggested that Congress has acted in this respect. Reference is made to the Act of March 4, 1907, 34 Stat. at L. 1415, 45 U. S. C. §§61-64, known as the Hours of Service Act, to the Railway Labor Act of May 20, 1926, 44 Stat. at L. 577, as amended, 45 U. S. C. §§151-163, and to the Fair Labor Standards Act of June 25, 1938, 52 Stat. at L. 1060, 29 U. S. C. §§201-219.

The said Hours of Service Act of March 4, 1907, supra, sec. 2, prescribes the hours of employment upon interstate railroads as follows:

"It shall be unlawful for any common carrier, its officers, or agents, subject to this act to require or permit any employees subject to this act to be or remain on duty for a longer period than sixteen consecutive hours. . . ."

The only employes included within this statute are those "actually engaged in, or connected with the movement of any train". See San Pedro, L. A. & S. L. R. Co. v. United States, 213 Fed. 326 (1914). See also opinion of Attorney General Francis Shunk Brown of Pennsylvania, 1917-1918 Op. Atty. Gen. 482.

The Hours of Service Act, supra, evidences no intention by the Federal Government to exercise control specifically over the hours of minors, nor over the hours of any employe not actually engaged in the movement of any train. However, even assuming that said minors

did perform services within the coverage of the Hours of Service Act, this would not invalidate or make inapplicable the provisions of the State Child Labor Law relating to the working hours of such minors. The Federal law was enacted to promote safety in operating trains by preventing excessive mental and physical strain which usually result from remaining too long in an exacting task. See Chicago & Alton R. R. Co. v. United States, 247 U. S. 197, 199 (1918). See also Baltimore & Ohio R. R. Co. v. Interstate Commerce Commission, 221 U. S. 612 (1911), and Atchison, Topeka & Santa Fe Ry. Co. v. United States, 269 U. S. 266 (1925). It would be vain to deny that to some extent the Federal enactment and the State laws under discussion are related in some of their purposes inasmuch as the State, in the interest of safeguarding the health and well-being of its minors, has placed limitations upon the nature and hours of their work. It is noteworthy, however, that although the State law prescribes a specific maximum number of hours of work for minors, namely, 44 hours in any one week, or eight hours in any one day, the Federal law merely limits hours to 16 consecutive hours for employes actually engaged in or connected with the movement of trains with a proviso of nine hours with respect to telegraph and telephone dispatchers, etc., who have duties relating to train movements. It is evident that the standards prescribed in the Federal Hours of Service Act were determined primarily in relation to the safety of the public and the movement of trains. The standards prescribed in the State legislation, however, bear a relation, primarily, to the health and well-being of minors.

The disparate purposes of the State and Federal legislation would appear to justify a conclusion that the State law would be operative even as to those minors performing functions within the general coverage of

the Federal law. As stated above, it is established and settled that a State, through the exercise of its police power, may regulate the nature and hours of labor of minors even though such regulation may affect interstate commerce. It has also been said that, ". . . in the application of this principle of supremacy of an act of Congress in a case where the State law is but the exercise of a reserved power, the repugnance or conflict should be direct and positive, so that the two acts could not be reconciled or consistently stand together . . .": Sinnot et al. v. Davenport et al., 22 How. 227, 243 (1859).

The purpose of a Federal law to displace a local law in a field in which the congressional enactment would be supreme must be definitely and clearly expressed, and will not be implied: Mintz et al. v. Baldwin, etc., 289 U. S. 346, 350 (1933). This rule was forcibly expressed in Illinois Central R. R. Co. v. State Public Utilities Commission of Illinois et al., 245 U. S. 493, 510 (1918), in the following language:

"In construing federal statutes enacted under the power conferred by the commerce clause of the Constitution . . . it should never be held that Congress intends to supersede or suspend the exercise of the reserved powers of a State, even where that may be done, unless, and except so far as, its purpose to do so is clearly manifested."

The rule was quoted by the Supreme Court in H. P. Welch Co. v. New Hampshire, 306 U. S. 79, 85 (1939), with the remark that the court had frequently applied that principle. See also Reid v. Colorado, 187 U. S. 137, 148 (1902), Missouri Pacific Ry. Co. v. Larabee Flour Mills Co., 211 U. S. 612, 621 et seq. (1909), Missouri, Kansas & Texas Ry. Co. v. Harris, 234 U. S. 412, 418, 419 (1914), Smith et al., etc., v. Illinois Bell Telephone Co., 282 U. S. 133, 139 (1930), Northwestern Bell Telephone Co. v. Nebraska State Railway Commission,

297 U. S. 471, 478 (1936), Kelly et al. v. Washington ex rel., 302 U. S. 1, 10 et seq. (1937), Missouri, Kansas & Texas Ry. Co. v. Haber, 169 U. S. 613, 623, 624 (1898), Crossman v. Lurman, 192 U. S. 189, 199, 200 (1904), Asbell v. Kansas, 209 U. S. 251, 257, 258 (1908), Savage v. Jones, etc., 225 U. S. 501, 533 (1912), Atlantic Coast Line R. R. Co. v. Georgia, 234 U. S. 280, 293, 294 (1914), Carey v. South Dakota, 250 U. S. 118, 122 (1919), and Gilvary v. Cuyahoga Valley Ry. Co., 292 U. S. 57, 60, 61 (1934).

From the above, it is readily seen that there is no repugnance between the State Child Labor Law, prescribing a limitation of 44 hours per week and eight hours a day on employment of minors, and the Federal act, limiting hours to 16 consecutive hours for employes actually engaged in or connected with the movement of trains, with a proviso of nine hours with respect to telegraph and telephone dispatchers who have duties relating to train movements, but making no provision relative to the employment of minors as such. The Pennsylvania Child Labor Law, supra, is not in conflict with but rather supplements the Federal Hours of Service Act, supra, by making definite provisions limiting hours of employment of minors and prohibiting the employment of said minors in certain occupations.

The Railway Labor Act, supra, was enacted to establish a complete and satisfactory system for the fixing of rates of pay, rules, and working conditions of railroad employes, and the settlement of labor disputes that arise on interstate carriers. The purposes of the said Railway Labor Act are stated, inter alia, to be:

"(4) to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions; (5) to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions."

The Railway Labor Act thus provides a method of fixing wages of employes by free contract or adjustment of labor disputes. See Long Island R. R. Co. v. Department of Labor of State of New York, 256 N. Y. 498, 177 N. E. 17 (1931). It is not a regulatory act and there is no limitation on hours of employment as such. The question to determine is whether the Railway Labor Act of 1926, supra, actually does supersede the State law.

That there is not a preëmption of the field of regulation of hours and working conditions by the Federal Railway Labor Act of 1926, supra, see the recent case of Terminal Railroad Association of St. Louis v. Brotherhood of Railroad Trainmen et al., 318 U. S. 1, where the court, addressing itself to the claim that a State regulation requiring cabooses on interstate trains is invalid, said (p. 6):

"The Railway Labor Act, like the National Labor Relations Act, does not undertake governmental regulation of wages, hours, or working conditions. Instead it seeks to provide a means by which agreement may be reached with respect to them. The national interest expressed by those Acts is not primarily in the working conditions as such. So far as the Act itself is concerned these conditions may be as bad as the employees will tolerate or be made as good as they can bargain for. The Act does not fix and does not authorize anyone to fix generally applicable standards for working conditions. The federal interest that is fostered is to see that disagreement about conditions does not reach the point of interfering with interstate commerce. The Mediation Board and Adjustment Board act to compose differences that threaten continuity of work, not to remove conditions that threaten the health or safety of workers. Cf. *Pennsylvania R. Co.* v. *Labor Board,* 261 U. S. 72, 84.

"State laws have long regulated a great variety of conditions in transportation and industry, such as

sanitary facilities and conditions, safety devices and protections, purity of water supply, fire protection, and innumerable others. Any of these matters might, we suppose, be the subject of a demand by workmen for better protection and upon refusal might be the subject of a labor dispute which would have such effect on interstate commerce that federal agencies might be invoked to deal with some phase of it. But we would hardly be expected to hold that the price of the federal effort to protect the peace and continuity of commerce has been to strike down state sanitary codes, health regulations, factory inspections, and safety provisions for industry and transportation. We suppose employees might consider that state or municipal requirements of fire escapes, fire doors, and fire protection were inadequate and make them the subject of a dispute, at least some phases of which would be of federal concern. But it cannot be that the minimum requirements laid down by state authority are all set aside. *We hold that the enactment by Congress of the Railway Labor Act was not a preëmption of the field of regulating working conditions themselves and did not preclude the State of Illinois from making the order in question."* (Italics supplied.)

See also Missouri Pacific R. R. Co. v. Norwood, etc., et al., 283 U. S. 249, 258 (1931), where on a bill for injunction against the enforcement of a State statute regulating freight train and switching crews the court held that, in the absence of a clearly-expressed purpose so to do, Congress will not be held to have intended to prevent the exertion of the police power of the States for the regulation of the number of men to be employed on such crews.

Furthermore, the court held that the State act, prescribing the number of men for freight train and switching crews, was not in conflict with the Railway Labor Act of 1926, as follows:

"No analysis or discussion of the provisions of the Railway Labor Act of 1926 is necessary to show that it does not conflict with the Arkansas statutes under consideration."

The Fair Labor Standards Act of 1938, supra, provides for minimum wages of employes engaged in commerce or in the production of goods for commerce; for maximum hours of employes engaged in the production of goods for commerce, but exempts employes engaged in transportation; and for certain prohibitions against oppressive child labor.

The case of United States v. Darby, 312 U. S. 100 (1941), sustained the constitutionality of the Fair Labor Standards Act of 1938, supra. It is interesting to note that the court in its opinion expressly overruled the case of Hammer, etc., v. Dagenhart et al., 247 U. S. 251 (1918), which had held that the regulation of child labor was exclusively within the jurisdiction of the State, and this is said to have eliminated the necessity for a constitutional amendment.

Under section 13 (b) railroads are exempted from the provisions of the Fair Labor Standards Act of 1938 relating to maximum hours. They are not exempted from section 12, prohibiting oppressive child labor. The only exceptions in this respect are found in section 13 (c) as follows:

"The provisions of section 12 relating to child labor shall not apply with respect to any employee employed in agriculture while not legally required to attend school, or to any child employed as an actor in motion pictures or theatrical productions."

However, section 18 of the Fair Labor Standards Act of 1938 provides that, if State standards are higher than Federal standards, then these higher State standards shall be enforced as follows:

"No provision of this Act or of any order thereunder shall excuse noncompliance with any Federal or State

law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this Act or a maximum workweek lower than the maximum workweek established under this Act, and no provision of this Act relating to the employment of child labor shall justify noncompliance with any Federal or State law or municipal ordinance establishing a higher standard than the standard established under this Act."

As there is no irreconcilability between the Federal Fair Labor Standards Act of 1938 and the Pennsylvania Child Labor Law, but rather a declaration in the Federal act for the enforcement of the more stringent State regulations, the State regulations are enforcible.

From the foregoing examination of relevant Federal legislation, it appears that the Federal Railway Labor Act, supra, does not preëmpt the field of the regulation of hours; that the Fair Labor Standards Act of 1938, supra, excepts from its regulatory provisions, relating to maximum hours, employes engaged in transportation; and that the Federal Hours of Service Act does not supersede the State's regulation of the hours of minors. Furthermore, none of the Federal acts, except the Fair Labor Standards Act, supra, governs the employment of minors in hazardous occupations. While the Fair Labor Standards Act, supra, alone prohibits oppressive child labor, it expressly gives effect to more stringent State regulations. Hence, the Pennsylvania Child Labor Law is not repugnant to the Federal legislation and is not an interference with interstate commerce but is rather in aid of and for the protection of minors engaged in such commerce, as well as in intrastate commerce and industries within the State.

It is our opinion, therefore, and you are accordingly advised, that the Pennsylvania Child Labor Law of May 13, 1915, P. L. 286, as amended, 43 PS §41 et seq.,

is applicable to minors between the ages of 16 and 18 years of age who may be employed by interstate railroads.

In Formal Opinion 388, 1941-1942 Op. Atty. Gen. 27 (1941), we held, and so advised your predecessor, that when interstate carriers and their employes, pursuant to the Railway Labor Act, supra, enter into collective bargaining agreements said act and agreements supersede the Women's Labor Law of July 25, 1913, P. L. 1024, as amended, 42 PS §101 et seq. Inasmuch as our conclusions herein conflict with those in Formal Opinion 388, supra, the latter, insofar as inconsistent, are overruled.