Robert HULL, Jr., Plaintiff–Appellant,

v.

John DUTTON, Defendant–Appellee.

No. 90–7531.

United States Court of Appeals,
Eleventh Circuit.

July 12, 1991.

J.P. Courtney, III, William E. Shreve, Lyons, Pipes & Cooks, Mobile, Ala., for defendant-appellee.

Before ANDERSON and CLARK, Circuit Judges, and TUTTLE, Senior Circuit Judge.

CLARK, Circuit Judge:

Plaintiff-appellant Robert Hull, Jr. brought this action on behalf of a class composed of hourly employees of the Alabama State Dock Department, alleging they had been unconstitutionally denied longevity pay benefits as provided under Alabama law. The district court granted summary judgment in favor of the defendant-appellee on the grounds that Alabama's longevity pay statute, as applied to employees of the Docks Department, is preempted by the Railway Labor Act. We affirm.

I.

The Docks Department is an Alabama state agency responsible for operation of the port facilities at Mobile and Terminal Railway, a switching railroad. It is a non-budgetary agency and receives no appropriations from the state treasury for compensation of its employees; these expenses are completely funded from its own operating revenues. The Docks Department has been determined to be a "carrier" within the meaning of the Railway Labor Act ("RLA")[1] and, unlike other state departments, is therefore required to bargain collectively with its employees.[2] The hourly employees of the Docks Department, both union and nonunion, are represented by various craft unions and a local of the International Longshoremen's Association, who act as their exclusive bargaining representatives.

Slade Watson, Mobile, Ala., for plaintiff-appellant.

1. *See* 45 U.S.C. § 151 et seq. (1988); *United States v. Feaster,* 410 F.2d 1354, 1368–72 (5th Cir.), *cert. denied,* 396 U.S. 962, 90 S.Ct. 427, 24 L.Ed.2d 426 (1969).

2. *See* 45 U.S.C. § 152 (first); *see also* Ala.Code § 33–1–16 (1975).

The collective bargaining agreements between the Docks Department and the unions set forth comprehensive terms and conditions of employment, including compensation, benefits, work hours, and holiday and vacation time. Employees of the Dock Department, however, are not eligible for certain other statutory benefits available to other state employees such as participation in the State Employees' Retirement System or the State Employee's Health Insurance Plan. The collective bargaining agreements have separate provisions concerning health insurance and retirement benefits. In addition, employees do not receive state holidays, but do receive those that have been set out in the collective bargaining agreements. The record shows that the unions have submitted various proposals during collective bargaining negotiations for longevity pay since 1973, but that there has never been any provision for longevity pay in any collective bargaining agreement between the Docks Department and the unions.

Under Alabama's longevity pay statute, all state employees are entitled each December to a lump sum payment ranging from $300 to $600 based on their length of employment with the state.[3] The statute states that "it shall be the duty of ... all department, board, authority and commission ... heads with regard to all state department, board and commission employees, to determine which state employees are entitled to longevity pay pursuant to this act."[4] After this statute went into effect in 1987, defendant John B. Dutton, executive director of the Docks Department, determined that none of his employees were eligible for longevity pay on the grounds that the collective bargaining agreements constituted the exclusive terms and conditions of employment.

After this suit was brought and the class certified, the district court granted defendants' motion for summary judgment on the grounds that Alabama's longevity pay statute is preempted by the RLA and the collective bargaining agreements negotiated pursuant to that Act. It found that the collective bargaining process prescribed in the RLA provided the exclusive basis for fixing the terms of employment for Docks Department workers and that any unilateral change in the rates of pay or working conditions by the Alabama legislature infringed on this regime imposed by federal law. Because the statute constituted a unilateral increase in rates of pay, a mandatory subject of bargaining under the RLA, the district court held that it was preempted by federal law, as applied to employees of the Docks Department. As a result, the plaintiff class had no entitlement to longevity pay under the statute and therefore could not make out a constitutional deprivation.

## II.

### A.

■ This case presents the question of whether Alabama's longevity pay statute, as applied to hourly employees of the Docks Department, is preempted by the collective bargaining agreements negotiated under the auspices of the Railway Labor Act.[5] It is well-settled that "[a] union agreement made pursuant to the [RLA] has ... the imprimatur of the federal law upon it and, by force of the Supremacy Clause ... could not be made illegal nor vitiated by any provisions of the laws of a

---

3. Ala.Code § 36–6–11 (Supp.1990).

4. *Id.* § 36–6–11(c).

5. At the outset, we note there is some doubt as to whether the Alabama legislature actually intended the longevity pay statute to apply to employees of the Docks Department. Although the statute does not, on its face, exclude class members from its coverage, *see id.* § 36–6–11(a), the legislature directed that these benefits be funded through the state treasury. *See id.* § 36–6–11(c). Thus, there is some inconsistency in extending the statute to the employees of a nonbudgetary agency of the state, who are paid through the agency's own operating revenues. In reaching the question of preemption, we, like the district court, assume without deciding that the employees of the Docks Department are intended beneficiaries of the longevity pay statute.

State." [6] Our analysis of this question is premised on the assumption that payment of longevity pay benefits to the class members would amount to an unilateral change by the State of the terms of these agreements fixing wages and benefits. Although it is no doubt true that the class members would welcome such an alteration, the issue here is whether the State is preempted by federal law from doing so.

■ As the district court noted, we need look no further than the Act itself to settle this question. The RLA imposes a duty on both management and labor "to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions." [7] The Act also forbids carriers from altering these terms, as embodied in a collective bargaining agreement, in any manner other than that prescribed by the agreement itself or the RLA. [8] Thus, a unilateral change in the terms and conditions of employment by a carrier is a circumvention of the duty to bargain that is embodied within the Act. [9] This prohibition applies in particular to any change, whether it be an increase or a decrease, in the wages paid by carriers to employees. [10] By enforcing a hard and fast rule against any unilateral changes in the terms of an agreement, the integrity of the collective bargaining mechanism, which lies at the heart of the RLA, is further promoted and enhanced. [11]

■ Applying these basic principles, it is quite obvious that the longevity pay statute, if applied to the employees of the Docks Department, infringes upon one of the mandatory subjects of collective bargaining. The statute therefore not only violates an express provision of the RLA, but is also preempted by that Act. As the district court noted, the "statute completely avoids the bargaining process and bypasses the unions representing Docks Department employees.... [thereby] interfer[ing] with the employees' right to bargain collectively." This conclusion is justified, despite the irony in this case of a state agency embracing the view that it is preempted by federal law. The RLA reflects Congress' determination that the collective bargaining process is best promoted if negotiated agreements are shielded from any unilateral changes by a carrier. Thus, as the bitter so often goes with the sweet, this prohibition must be rigorously enforced, whether or not the changes sought by the carrier are beneficial to employees.

### B.

■ Hull contends, however, that application of Alabama's longevity pay statute to hourly employees of the Docks Department is not preempted by the RLA under the rationale of the Supreme Court's decisions in *Metropolitan Life Insur. Co. v. Commonwealth of Massachusetts*, [12] and

**6.** *Railway Employees' Department v. Hanson,* 351 U.S. 225, 232, 76 S.Ct. 714, 718, 100 L.Ed. 1112 (1956).

**7.** 45 U.S.C. § 152 (first); *accord International Bhd. of Teamsters v. Southwest Airlines Co.,* 842 F.2d 794, 799–800 (5th Cir.1988), *vacated on other grounds,* 875 F.2d 1129 (5th Cir.1989) (en banc).

**8.** *See id.* § 152 (seventh). Section 156 sets out the prescribed statutory method for altering rates of pay, rules, and working conditions outside the scope of a collective bargaining agreement. Neither of the parties contend nor does the record support any finding that this procedure has been followed in this case.

**9.** *See NLRB v. Katz,* 369 U.S. 736, 743, 82 S.Ct. 1107, 1111, 8 L.Ed.2d 230 (1962). Courts interpreting the RLA have routinely relied on those cases interpreting analogous provisions of the National Labor Relations Act. *See, e.g., Team-*

*sters,* 842 F.2d at 800; *Balzeit v. Southern Pacific Trans. Co.,* 569 F.Supp. 986, 988–89 (N.D.Cal. 1983).

**10.** *See May Department Stores Co. v. NLRB,* 326 U.S. 376, 383–84, 66 S.Ct. 203, 208–09, 90 L.Ed. 145 (1945); *Good Hope Refineries, Inc. v. NLRB,* 620 F.2d 57, 59 (5th Cir.), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980); *Winn–Dixie Stores, Inc. v. NLRB,* 567 F.2d 1343, 1349–50 (5th Cir.1978), *cert. denied sub nom. Amalgamated Meat Cutters v. Winn Dixie Stores, Inc.,* 439 U.S. 985, 99 S.Ct. 576, 58 L.Ed.2d 656 (1978); *Long Island R. Co. v. Department of Labor,* 256 N.Y. 498, 177 N.E. 17 (1931).

**11.** *See California v. Taylor,* 353 U.S. 553, 559, 77 S.Ct. 1037, 1041, 1 L.Ed.2d 1034 (1957).

**12.** 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985).

*Fort Halifax Packing Co. v. Coyne.* [13] In these two cases, the Court held that a state's imposition of minimum substantive labor standards on the terms of a collective bargaining agreement is not preempted by the National Labor Relations Act ("NLRA") so long as the purpose of the state legislation is not incompatible with the general goals of the NLRA.[14] For example, in *Metropolitan,* the Court found that a state law—which required certain minimum mental health care benefits be provided to a state resident insured under a general health insurance policy or an employee health-care plan—was not preempted by the NLRA when applied to benefit plans negotiated through collective bargaining under the auspices of that Act.[15] The holding was premised on the view that "[m]inimum state labor standards affect union and nonunion employees equally, and neither encourage nor discourage the collective bargaining processes that are the subject of the NLRA." [16] This reasoning was reaffirmed by *Fort Halifax* in which the Court held that a state law—requiring employers, in the event of a plant closing, to provide a one-time severance payment to employees not covered by an express contract providing for such pay—was also not preempted by the NLRA.[17]

These cases, however, are easily distinguishable and do not require us to alter our previous conclusion that the Docks Depart-

ment is preempted from applying the longevity pay statute to its hourly employees. Although the Supreme Court did not define what it considered to be a "minimum labor standard," we find that Alabama's longevity pay statute is not such a beast. The statutes in controversy in both *Metropolitan* and *Fort Halifax* were "valid and unexceptional exercise[s] of the [state's] police power" [18] and applied not only to union and nonunion members, but also to those workers not employed by the state. In short, these statutes were an ordinary part of the grist for the legislative mill that turns daily in our various statehouses. Although these laws may "touch[ ] and concern[ ] ... the complex interrelationships between employees, employers, and unions," [19] Congress did not intend that they be preempted by federal labor legislation.[20]

In contrast, Alabama's longevity pay statute applies only to its own employees and not to its citizens generally. The statute is an expression of the state's power as an employer to regulate relations with its own employees, rather than the state's authority to regulate in the interest of the health, welfare, and mores of its citizens.[21] Thus, the state, *when acting as an employer,* has a much narrower latitude to enact laws that trench upon the terms of a collective bargaining agreement negotiated under the regime of federal labor laws. The "state civil service relationship," as the

**13.** 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987).

**14.** *See Fort Halifax,* 482 U.S. at 19–22; 107 S.Ct. at 2221–23; *Metropolitan,* 471 U.S. at 753–56, 105 S.Ct. at 2396–97.

**15.** *See Metropolitan,* 471 U.S. at 753–58, 105 S.Ct. at 2396–99.

**16.** *Id.* at 755, 105 S.Ct. at 2397.

**17.** *See Fort Halifax,* 482 U.S. at 19–23, 107 S.Ct. at 2221–23. Although these two cases were decided in the context of the NLRA, virtually identical reasoning was previously adopted by the Court to hold that the RLA did not preempt a state rule requiring a railroad terminal company to provide cabooses for its employees. *See Terminal R.R. Ass'n v. Brotherhood of R.R. Trainmen,* 318 U.S. 1, 6–9, 63 S.Ct. 420, 423–24, 87 L.Ed. 571 (1943) (cited in *Metropolitan,* 471 U.S. at 757 n. 32, 105 S.Ct. at 2398 n. 32).

**18.** *Metropolitan,* 471 U.S. at 758, 105 S.Ct. at 2398–99.

**19.** *See id.* at 757, 105 S.Ct. at 2398.

**20.** *See Trainmen,* 318 U.S. at 7, 63 S.Ct. at 423 (holding that RLA was not intended "to strike down state sanitary codes, health regulations, factory inspections, and safety provisions for industry and transportation" and that the RLA "was not a preemption of the field of regulating working conditions themselves.")

**21.** *Cf. White v. Massachusetts Council of Construction Employers, Inc.,* 460 U.S. 204, 208, 103 S.Ct. 1042, 1044, 75 L.Ed.2d 1 (1983) (recognizing analogous doctrine that "when a state ... government enters the market as a participant it is not subject to the restraints of the Commerce Clause").

Supreme Court has noted, "is the antithesis of that established by collectively bargained contracts throughout the railroad industry." [22]  Indeed, the logic of Hull's argument would give the State tremendous liberty to abrogate collective bargaining contracts with its own employees under the guise of enacting a "minimum labor standard."  The State, for example, could just as easily unilaterally *lower* the wages of employees set by contract, as well as *raise* them if the longevity pay statute were applied to employees of the Docks Department.  Such latitude would have a pernicious effect on the collective bargaining process and would directly implicate the concern recognized in both *Metropolitan* and *Fort Halifax* that this mechanism should be shielded from intrusive state laws.

### III.

Alabama's longevity pay statute, as applied to hourly employees of the Docks Department, is preempted by the RLA because it is a unilateral change by a carrier in a mandatory subject of bargaining and is not a "minimum labor standard" within the meaning of the Supreme Court's decisions.  The order and judgment of the district court is therefore AFFIRMED.

**22.** *Taylor,* 353 U.S. at 560, 77 S.Ct. at 1041.