(No. 27361.—

OLIVE A. LEITCH *et al.*, Appellants, *vs.* THE SANITARY DISTRICT OF CHICAGO, *et al.*, Appellees.

*Opinion filed March 21, 1944—Rehearing denied May 11, 1944.*

JAMES J. BARBOUR, of Evanston, and EDWARD H. S. MARTIN, of Chicago, for appellants.

ERNST BUEHLER, LAWRENCE J. FENLON, WILLIAM C. OEHLSEN, BARNET HODES, Corporation Counsel, J. HERZL SEGAL, and L. LOUIS KARTON, all of Chicago, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellants appeal from a decree of the superior court of Cook county dismissing their amended consolidated complaint which sought an injunction against appellees requiring the removal of certain alleged obstructions from a watercourse.

April 7, 1936, appellant Olive A. Leitch, and others, filed their complaint against the Sanitary District of Chicago and others. On March 19, 1937, appellant Dollie F. Leitch and others filed their complaint against the Sanitary District of Chicago, the City of Chicago, the State of Illinois, and others. On October 20, 1937, on appellants' motion, the causes were consolidated, that against the State of Illinois was dismissed, and appellants filed an amended consolidated complaint.

This consolidated complaint alleges that since January 1, 1916, appellants have been owners in fee and in possession of the property involved herein, and referred to as lot 5, consisting of 3.1 acres, and located on the west arm of the south branch of the Chicago river between Thirty-

ninth street (Pershing road) and South Ashland avenue; that this lot has valuable riparian rights of ingress and egress by water, extending to the center thread of the stream, which are being illegally and unlawfully seized, obstructed and destroyed by appellees by the construction of a sewer, a permanent bridge, and by filling in with earth, concrete and metal across the branch at Thirty-ninth street and vicinity, to the irreparable injury of appellants, and this notwithstanding the branch at that place is a navigable waterway of a navigable depth of 13 to 18 feet, and of a width of 150 to 200 feet, which has been used for many years for transportation to and from appellants' property, docks and wharves.

The complaint also alleges that appellants have valuable rights in the use of the Chicago river and its branches as a means of reaching their lot by water; that the branch is an open port of entry in and to all navigable waters of Illinois and the United States, and a valuable continuous highway by water to every port of entry to the world's commerce through the deep waterway system. The complaint alleges these obstructions are in violation of article IV of the Ordinance of 1787, section 1 of the schedule of the constitution of Illinois of 1818, section 1 of the schedule of the constitution of 1848, section 1 of the schedule of the constitution of 1870, sections 2 and 13 of article II of the constitution of 1870, and section 1 of article XIV of the amendments to the constitution of the United States, and that these obstructions violate provisions of an act of the General Assembly of Illinois creating the Rivers and Lakes Commission to protect navigable water of Illinois from being seized, obstructed or destroyed as to navigation purposes. It is also alleged that the sewer constructed by the Sanitary District is 14 feet above the bed of the branch; that the bridge is of a permanent nature and so low, to-wit, less than four feet from the surface of the branch, that it will forever illegally

and unlawfully destroy such navigation and appellants' rights, and that appellees have also allowed this branch, between Thirty-ninth street and South Ashland avenue, to be illegally and unlawfully befouled by trade wastes from the stockyards and sewage emptying into said river, between said street and avenue, to the irreparable injury of appellants.

The prayer is that appellees be enjoined from proceeding further with the construction of the sewer and bridge and from befouling or allowing the branch to be befouled with sewage or stockyards waste of a solid nature, and from interfering with and obstructing navigability of said branch pending the suit and perpetually thereafter. The prayer also is that appellees be required by mandatory injunction to remove all filling, sewer, bridge and all sewage and stockyards waste of a solid nature, and from opening Thirty-ninth street over this branch, until such type of bridge has been constructed as will not interfere with navigation. A demurrer to the complaint was sustained and, on appeal to this court, (*Leitch* v. *Sanitary District,* 369 Ill. 469,) this court held the complaint stated a good cause of action, reversed the order sustaining the demurrer, and remanded the cause with directions to overrule the demurrer. The cause was redocketed, answers of each of appellees were filed and the cause referred to a master to take the proofs and report his conclusions. Since filing this complaint both the bridge and sewer have been completed.

The answer of the Sanitary District put in issue the ownership of the property, the riparian rights attached thereto, the navigability of the west arm of the south. branch, and its use for transportation of merchandise. It denied filling in the river and the construction of the bridge, alleging the latter was constructed by the State of Illinois. The answer also denied that defendants had interfered with navigation by the construction of the sewer. The city of Chicago adopted the answer of the Sanitary

District of Chicago and either denied or prayed strict proof of the allegations of the consolidated complaint.

The proof showed appellants' ownership of lot 5; that the branch of the river had been navigable prior to the construction of the bridge and sewer, and that the sewer was constructed across the branch, north of the bridge, by the Sanitary District of Chicago. The top of the sewer was shown by the evidence to be 13.69 to 13.79 feet below the surface of the water. The proof also showed that the bridge across the branch at Thirty-ninth street was constructed by the State of Illinois. A water main was constructed by the city of Chicago approximately 3 feet north of the bridge, on pile saddles which were a part of the bridge. There is no allegation in the amended complaint that the water main is an obstruction to navigation.

Appellants' evidence tends to show that the clearance from the water to the lower part of the bridge is from 4 to 4.5 feet. Appellees' evidence is that, by measurement, the clearance is from a minimum of 11.5 feet to a maximum of 12.3 feet. Appellants' witnesses estimated the horizontal clearance between pile bents in the center of the branch to be 12 to 15 feet. No witness for appellants testified to having measured the clearance. Appellees' witnesses testified that, by measurement, the horizontal clearance is 24 feet. Appellants offered no proof tending to show that either of appellees had filled the branch with earth or other solids. The master, who by reason of expiration of his term of office was appointed special commissioner, recommended the denial of the injunction and dismissal of the consolidated complaint, and the chancellor overruled appellants' exceptions thereto, found the issues against them, and dismissed the consolidated complaint at appellants' cost.

The errors urged are: (1) The decree is contrary to law and the evidence; (2) it wrongfully construed sections 2 and 13 of article II of the Illinois constitution and

section 1 of article XIV of the amendments to the United States constitution, thereby depriving appellants of their property without due process of law, denying equal protection of the laws, and damaging their property for public use without just compensation. Appellants say that the decision of this court in *Leitch* v. *Sanitary District*, 369 Ill. 469, is controlling here and that the decree appealed from is in direct conflict therewith. On the former appeal, the sole question was whether the complaint stated a good cause of action. It was held that plaintiffs having stated facts which gave rise to certain valuable rights as riparian owners, which defendants were charged with impairing, they were entitled to have their complaint answered. It was there said: "Whether the allegations of the complaint are true, or whether there are other matters which would bar the relief prayed, can only be shown by an answer, and we are of the opinion the superior court of Cook county erred in dismissing plaintiffs' complaint." This was not an adjudication on the merits.

Appellants did not prove that either of appellees constructed the permanent bridge over the arm of the river at Thirty-ninth street. It is this obstruction which cuts off navigation of that stream from appellants' property, except for boats which can pass under the bridge as constructed. This bridge was constructed by the State as a part of a public highway. Appellants made proof that the city of Chicago constructed, on a part of the bridge, a city water main across the branch, on the north side of the bridge. The clearance of said main above the surface of the water is shown to be six inches greater than the clearance of the bridge. It can hardly be said that the allegation that the defendants were solidly filling the river with earth, concrete and metal, and a permanent bridge and sewer, is an allegation that the water main was an obstruction complained of. No other allegations appear in the complaint to the effect that the construction of the water main con-

stituted an obstruction of the watercourse. Citation of authorities is not necesesary in support of the well-established rule that a party to a suit, either at law or equity, cannot have relief under proofs without allegations, nor under allegations without proof in support. There being no allegations in the complaint that the water main of the city was an obstruction to navigation in said west arm, it was not error to deny relief as to the water main.

As the bridge was constructed by the State of Illinois, not a party to this suit, there is here no basis for relief from that structure. Appellants' counsel argue that as the original plans of the bridge contemplated a water main passing under the foot walk on the north side of the bridge, such must have been with the co-operation of the city, hence the latter is a joint tort feasor and so responsible for the removal of the bridge. We are unable to follow this argument. The State built the bridge and the fact that it permitted the city to lay a water main along its structure gave the city no control over the bridge.

The main obstruction constructed by appellees, if it be such, proved by appellants, is the sewer constructed in the bottom of the west branch, and which has a clearance of 13.69 feet from the top of the sewer to the surface of the water. Appellants' counsel in their brief admit the vertical clearance above the sewer is ample for such boats as now use the river, but they say that traffic in the river has varied greatly in the past and may vary in the future, so that vessels requiring a greater depth of water, such as lake or other vessels may be able to use the west arm if the sewer obstruction is lowered or removed. The record shows that the Federal government improved the south branch of the Chicago river by deepening it to 17 feet, but this dredging did not extend south of Thirty-fifth street over a quarter of a mile north of appellants' property. The evidence does not indicate that the United States government at any time plans to improve the west arm of the

south branch to permit lake vessels to navigate it. We are unable to see from the evidence any likelihood that this west arm of the south branch will ever be made navigable for lake boats. It is a dead-end arm of the south branch of the Chicago river and extends but a short way beyond appellants' property.

It seems clear that to require the removal or lowering of the sewer by the Sanitary District, which, by the admission of appellants, leaves sufficient water depth for such boats as at the present time wish to use the west arm, or to require the city of Chicago to remove the water main, would result in no benefit to appellants, since the bridge spanning the river at Thirty-ninth street would still constitute a permanent obstruction to any and all water craft having a beam over 24 feet in width or a vertical height of 11.5 or greater. As herein pointed out, the city has no authority to remove or change the level of the bridge and neither the State nor its Department of Public Works and Buildings is a party here. It is a well-recognized rule that equity will not require the performance of a useless act. In *Beattie* v. *Whipple,* 154 Ill. 273, plaintiff sought to set aside an alleged forged power of attorney and deed executed thereunder, and to have record title to the land restored to him. The complaint, on its face, revealed that the title to the property had been established, by the 20-year statute of limitations, in the grantees of the grantee in the deed alleged to have been forged. This court, in denying the relief sought, again announced the rule that equity will not do that which will be of no benefit to the party asking it, and which will work an injury to others. To the same effect are *Werden* v. *Graham,* 107 Ill. 169; *Chicago and Joliet Railroad Co.* v. *Healy,* 94 Ill. 416, *Green* v. *Green,* 34 Ill. 320, and *Foster* v. *Mansfield, Coldwater and Lake Michigan Railroad Co.* 146 U. S. 88, 36 Law. ed. 899. So, in this case, the result of a decree such as ap-

pellants seek would afford them no relief, while imposing substantial hardship on appellees.

Appellants insist the decree erroneously gave judgment and execution to the special commissioner for the portion of his fees which had not been paid. The decree ordered $250, the balance of fees due him, be paid to him "and in default thereof" he "have judgment therefor and execution issue thereon." The decree does not enter a judgment for the unpaid special commissioner's fees in the sum of $250 but orders appellants to pay the same. Before an execution can issue for the payment of such commissioner's fees, a showing must necessarily be made that appellants failed to pay that amount, as ordered to do, whereupon the court could and no doubt would enter a judgment upon which an execution might issue. This is true generally in cases of costs awarded.

Finding no error in the record, the decree of the superior court is affirmed.

*Decree affirmed.*