(No. 62419

THE PEOPLE *ex rel.* E. ALLEN BERNARDI, Director
of Labor, Appellant, v. THE CITY OF HIGHLAND
PARK *et al.*, Appellees.

*Opinion filed February 11, 1988.—Rehearing
denied April 5, 1988.*

MILLER, J., joined by MORAN, C.J., and RYAN, J., dissenting.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Rosalyn B. Kaplan, of Chicago, and Shawn W. Denney, Assistant Attorneys General, of counsel), for appellant.

Thomas H. Compere, Corporation Counsel, of Highland Park, and Bradtke & Zimmermann, of Mount Prospect (Erwin W. Jentsch, of counsel), for appellees City of Highland Park *et al.*

Thomas W. Kelty, Brian T. Otwell and John M. Myers, of Pfeifer & Kelty, P.C., of Springfield, for appellee Durocher Dock & Dredge.

Lester Asher, Edwin H. Benn and Stephen B. Rubin, of Asher, Pavalon, Gittler & Greenfield, Ltd., of Chicago, for *amicus curiae* Illinois State Federation of Labor and Congress of Industrial Organizations.

Marvin J. Glink, of Ancel, Glink, Diamond, Murphy & Cope, P.C., of Chicago, and Thomas W. Kelty and John M. Meyers, of Pfeifer & Kelty, P.C., and Roger Huebner, of Springfield, for *amici curiae* Illinois Municipal League and City of Naperville, Illinois.

Michael W. O'Hara and William K. Cavanagh, of Cavanagh, Hosteny & O'Hara, of Springfield, for *amici curiae* Laborers International Union of North America, *et al.*

Robert J. Mangler, Corporation Counsel, for *amicus curiae* Village of Wilmette.

David W. Stuckel, of Harvey & Stuckel, Chtd., of Peoria, for *amicus curiae* Illinois Prevailing Wage Council, Inc.

JUSTICE SIMON delivered the opinion of the court:

The principal issue in this appeal is whether a home rule municipality must conform to the requirements of "An Act regulating wages of laborers, mechanics and other workers employed in any public works ***" (Ill. Rev. Stat. 1985, ch. 48, pars. 39s—1 through 39s—12) (Prevailing Wage Act) in seeking bids and awarding contracts for public works projects. The Illinois Department of Labor, through its Director, brought this action in the circuit court of Lake County to enjoin defendant City of Highland Park from awarding a contract for a public works project without first complying with the provisions of the Prevailing Wage Act. The circuit judge dismissed the action, holding that the city, as a home rule unit, could choose not to follow the Act. The appellate court affirmed that decision (135 Ill. App. 3d 580), and we allowed the Director's petition for leave to appeal (103 Ill. 2d R. 315(a)). This court filed an opinion on November 20, 1986, holding that as an exercise of its home rule authority, Highland Park could abrogate the Prevailing Wage Act. On rehearing and reconsideration of its earlier opinion, this court now concludes that the Prevailing Wage Act addresses issues pertaining to state-wide rather than local affairs, and as a consequence,

Highland Park had no choice but to comply with the statute's requirements.

The facts in this case are not in dispute. On December 29, 1983, the City of Highland Park issued contract specifications for a public works project involving the George B. Prindle Water Treatment Plant. The plant draws its supply from Lake Michigan, and the project called for an intake line serving the plant to be cleaned and then extended some distance into a deeper part of the lake; the purposes of this work were to improve the quality of the water drawn into the plant and to prevent the intake line from freezing, as it had done in the past, threatening the supply of water to the five communities and 70,000 residents served by the plant. Following an investigation into the matter, the Director filed a complaint on February 10, 1984, for injunctive and other relief. The complaint alleged that the city was in violation of the Act by failing to ascertain the local level of wages or adopt the Department's figures, by failing to specify the prevailing wages in the call for bids, and by failing to inform the bidders that they would be required to pay the prevailing rates to workers on the project. The Prevailing Wage Act requires that wages on public works projects correspond to those paid generally on public works projects in the county. Apparently the city council intended to award the contract at its next meeting to the successful bidder, defendant Durocher Dock & Dredge Corporation, and the circuit judge granted the Director's motion for a temporary restraining order.

The city and Durocher admitted that the Prevailing Wage Act had not been complied with, but they contended that the city, as a home rule unit, was not required to comply with the Act. The parties stipulated that the city's failure to refer to the Act in the specifications for the project was "neither a negligent omission nor an error" and that "payment of wages involved with

and as prescribed by the Act will result in increased costs to the city for the construction of the water intake extension." The parties also stipulated "[t]hat from and after July 1, 1971, the effective date of the Constitution of Illinois of 1970, the City has not and never has taken the steps which it asserts a non-home rule unit must take and which the Department asserts all public agencies must take to comply with the terms, conditions and regulations of the Act."

The circuit judge later denied the Director's request for a preliminary injunction, dissolved the temporary restraining order that had been issued earlier, and dismissed the Director's action. Finding that the intake extension project for the water-treatment plant was essentially a municipal affair, the circuit judge reasoned that it was within the scope of the city's home rule authority to decide not to comply with the Prevailing Wage Act in contracting for the work; the court noted too that the legislature had not expressed an intent to preempt home rule authority in this area. The circuit judge also believed that the city was not required to pass an ordinance to effect an exercise of its home rule authority. The appellate court affirmed the circuit court's decision, relying essentially on the same reasons.

The parties to this appeal have disclosed that the intake extension project in which this controversy is rooted has been completed, and it follows that the injunctions sought by the Director cannot issue. (See *Leitch v. Sanitary District* (1944), 386 Ill. 433, 440 (injunction denied because "equity will not require the performance of a useless act").) Although this court will dismiss an appeal as moot upon notice of facts not of record (*La Salle National Bank v. City of Chicago* (1954), 3 Ill. 2d 375, 379), the Director's appeal of this case is not moot merely because the injunctions enumerated in his prayer for relief are now too late. There is

life in the appeal because our decision could have a direct impact on the rights and duties of the parties. In *People v. Lynn* (1984), 102 Ill. 2d 267, the defendant challenged the legality of criminal convictions he received without benefit of counsel. This court entertained his appeal even though he had served his sentences because "nullification of a conviction may have important consequences to a defendant." (102 Ill. 2d at 273.) As was true in *Lynn*, resolution of the Director's appeal will not affect concluded events, but our decision of the issue will "have important consequences" for the parties before the court.

The Director's action was brought pursuant to section 11 of the Act (Ill. Rev. Stat. 1983, ch. 48, par. 39s—11) and asked in addition to injunctive relief for "such other relief as the Court deems just and proper." Section 11 provides in part: "Where objections to a determination of the prevailing rate of wages or a court action relative thereto is pending, the public body shall not continue work on the project unless sufficient funds are available to pay increased wages if such are finally determined ***." Thus, section 11 contemplates the pendency of litigation even after the contracts have been awarded and the project completed; it establishes a mechanism whereby public works improvements may go forward while workers' rights to possibly greater wages are protected. If the public body chooses to continue the work while a court action is in progress, the public body must have the money to pay workers the difference between their wages and the finally determined prevailing wage applicable in the locale. This action to ascertain the reach of the Prevailing Wage Act in home rule jurisdictions is, should the Act be found to apply, the necessary prerequisite to a determination of whether the wages paid on this project were lower than required and also whether Highland Park must disburse the additional

wages which, by proceeding with the intake extension project, it impliedly guaranteed were available if needed. Additionally, a decision in this case will affect the parties by establishing whether the Director is required to publish Durocher's noncompliance in the Illinois Register, thus precluding Durocher from being awarded government contracts in Illinois for two years. (Ill. Rev. Stat. 1983, ch. 48, par. 39s—11a.) In sum, we cannot say that "no real present question involving actual interests and rights" (*Chicago City Bank & Trust Co. v. Board of Education* (1944), 386 Ill. 508, 520) is before us. Therefore, the Director's appeal is not moot.

Even if the defendants' duties under the Act were no longer controverted, the case would still be decided as one which "falls into the 'capable of repetition, yet evading review' category" of exceptions to the mootness doctrine. (*Madison Park Bank v. Zagel* (1982), 91 Ill. 2d 231, 236, quoting *Sosna v. Iowa* (1975), 419 U.S. 393, 399-400, 42 L. Ed. 2d 532, 540, 95 S. Ct. 553, 557.) As demonstrated here, in future cases the public works project giving rise to litigation regarding the Act's coverage in a home rule jurisdiction will likely have been completed—at least the construction contracts will have been awarded—prior to a final adjudication of the home rule issue in this court. Considering the public interest in and the importance of the question presented, and the necessity of resolution for the sake of public officials elsewhere in the State who must decide whether their home rule jurisdictions will abide by the Prevailing Wage Act, evading review of this question here and in later cases would be injudicious. (*People ex rel. Wallace v. Labrenz* (1952), 411 Ill. 618, 622-23.) We refuse to use the mootness doctrine to make *de facto* rulings that arise simply because construction crews triumph in a race against the State judiciary.

The Prevailing Wage Act was enacted in 1941, earlier versions having been declared unconstitutional. (See *Reid v. Smith* (1940), 375 Ill. 147; *Mayhew v. Nelson* (1931), 346 Ill. 381.) Section 1 of the Act declares:

"It is the policy of the State of Illinois that a wage of no less than the general prevailing hourly rate as paid for work of a similar character in the locality in which the work is performed, shall be paid to all laborers, workers and mechanics employed by or on behalf of any and all public bodies engaged in public works." (Ill. Rev. Stat. 1985, ch. 48, par. 39s—1.)

The Act applies "to anyone under contracts for public works," and public works include "all fixed works constructed for public use by any public body, other than work done directly by any public utility company, whether or not done under public supervision or direction, or paid for wholly or in part out of public funds." (Ill. Rev. Stat. 1985, ch. 48, par. 39s—2.) The Act defines public body in the following terms:

" 'Public body' means the State or any officer, board or commission of the State or any political subdivision or department thereof, or any institution supported in whole or in part by public funds, authorized by law to construct public works or to enter into any contract for the construction of public works, and includes every county, city, town, village, township, school district, irrigation, utility, reclamation improvement or other district and every other political subdivision, district or municipality of the state whether such political subdivision, municipality or district operates under a special charter or not." (Ill. Rev. Stat. 1985, ch. 48, par. 39s—2.)

The Act provides that a call for bids for a public works project must specify that prevailing wages are to be paid, and that requirement must also be included in the contract for the work; the prevailing wage levels are to be ascertained by the public body awarding the contract or by the Department of Labor. (Ill. Rev. Stat. 1985, ch.

48, pars. 39s—4, 39s—9.) The Act also provides that a public body may require a contractor to pay wages exceeding prevailing levels. (Ill. Rev. Stat. 1985, ch. 48, par. 39s—7.) The Department is to enforce the various provisions of the Act, and violators may be subject to criminal penalties. (Ill. Rev. Stat. 1985, ch. 48, par. 39s—6.) Workers employed on public works projects have certain rights under the Act, and the Department is to publish a list of noncomplying contractors and subcontractors. Ill. Rev. Stat. 1985, ch. 48, pars. 39s—11, 39s—11a.

In *Bradley v. Casey* (1953), 415 Ill. 576, the court upheld the constitutionality of the Act, with the exception of a provision not relevant here. In *City of Monmouth v. Lorenz* (1963), 30 Ill. 2d 60, the court found unconstitutional certain amendments making the Act applicable to workers employed directly by public bodies; in connection with that, provisions had been added concerning the allocation of motor fuel taxes to public bodies, and those provisions also were invalidated. More recently, challenges to the constitutionality of the Act failed in *Hayen v. County of Ogle* (1984), 101 Ill. 2d 413, and *People ex rel. Bernardi v. Roofing Systems, Inc.* (1984), 101 Ill. 2d 424. In both *Hayen* and *Bradley* the court noted that the Act secured the " 'advantage to the state of having the work performed under conditions which give some assurance that the work will be completed without interruptions or delay by workmen of average skill,' " quoting *Long Island R.R. Co. v. Department of Labor* (1931), 256 N.Y. 498, 513, 177 N.E. 17, 22. (*Hayen v. County of Ogle* (1984), 101 Ill. 2d 413, 421; *Bradley v. Casey* (1953), 415 Ill. 576, 586.) The Prevailing Wage Act also serves to protect local workers by removing the incentive to import less expensive labor from areas outside the locality in which the work is being performed. See *Universities Research Association, Inc. v. Coutu* (1981),

450 U.S. 754, 773-74, 67 L. Ed. 2d 662, 677, 101 S. Ct. 1451, 1462-63 (discussing purpose of analogous Federal law, the Davis-Bacon Act).

In this court, as he did in the circuit and appellate courts, the Director argues that the Prevailing Wage Act does not pertain to matters of local concern and therefore falls outside the realm of home rule authority. His argument is not that the legislature has preempted that authority, but that, as a threshold matter, the City of Highland Park had no home rule authority in this field for the legislature to preempt.

Home rule abrogates the restrictions of Dillon's Rule of municipal law (J. Dillon, Municipal Corporations §237 (5th ed. 1911)), under which a unit of local government is deemed to have only those powers that have been specifically granted to it by the sovereign. (*City of Carbondale v. Yehling* (1983), 96 Ill. 2d 495, 497; Ill. Ann. Stat., 1970 Const., art. VII, §6, Constitutional Commentary, at 22 (Smith-Hurd 1971); 7 Record of Proceedings, Sixth Illinois Constitutional Convention 1603-04.) Home rule should be understood, then, as "a method of distributing power between state and local governments. It is not intended to increase the sum total of governmental power." (Sandalow, *The Limits of Municipal Power Under Home Rule: A Role for the Courts*, 48 Minn. L. Rev. 643, 664 (1964).) The source of the city's home rule power is found in article VII, section 6(a), of the Constitution of 1970 (Ill. Const. 1970, art. VII, §6(a)), which provides:

> "(a) A County which has a chief executive officer elected by the electors of the county and any municipality which has a population of more than 25,000 are home rule units. Other municipalities may elect by referendum to become home rule units. Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and af-

fairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt."

Other provisions of section 6 establish procedures, not followed here, by which the General Assembly can preempt home rule authority in matters pertaining to local government and affairs, but consideration of those provisions is unnecessary to our decision in this case.

The defendants contend that this case presents an issue "pertaining to [the city's] government and affairs" because the project was undertaken to solve the city's water intake problem, it was funded solely by Highland Park taxpayers, and the cost of compliance with the Act would fall entirely upon those same taxpayers. Although the contractors for this project are not from Highland Park, the defendants point out the absence of evidence showing that the workers on this project came from outside the city. According to the defendants, the Director must prove that this improvement project is a matter of statewide concern, and the Director has failed to do so. (There is evidence suggesting that four communities other than Highland Park are served by this facility, but the evidence does not show the nature of Highland Park's commitment, if any, to maintain that supply or improve its treatment facility.) That the need for constructing an extended intake and the manner of financing that construction may be an entirely local affair is not the issue; no question has been raised in this appeal of the city's authority to weigh the costs and determine whether to embark on the project. Our inquiry is whether Highland Park's departure from the Prevailing Wage Act is a matter of local concern, and we conclude that it is not.

The limited grant of power to home rule units in section 6(a) legitimizes only those assertions of authority that address problems faced by the regulating home rule

unit, not those faced by the State or Federal governments. (*City of Des Plaines v. Chicago & North Western Ry. Co.* (1976), 65 Ill. 2d 1, 5.) "Whether a particular problem is of statewide rather than local dimension must be decided not on the basis of a specific formula or listing set forth in the Constitution but with regard for the nature and extent of the problem, the units of government which have the most vital interest in its solution, and the role traditionally played by local and statewide authorities in dealing with it." (*Kalodimos v. Village of Morton Grove* (1984), 103 Ill. 2d 483, 501.) To answer the question posed by the Director in his appeal, then, the court must examine the extent to which the conduct in question affects matters outside Highland Park, the traditional role of municipal versus State regulation in this field, and which level of government has the more vital interest in regulating wages paid to laborers.

Departure from the prevailing wage in this case is beyond the authority accorded home rule units because it directly affects matters and individuals outside the territorial boundaries of Highland Park. (See, *e.g., Bridgman v. Korzen* (1972), 54 Ill. 2d 74, 78.) Allowing a single municipality in Lake County to avoid its obligations under the prevailing wage law will have a direct impact upon wages paid workers on public works projects at least throughout the county. The prevailing wage is determined solely by reference to wages paid on public works (Ill. Rev. Stat. 1985, ch. 48, par. 39s—2; *Hayen v. County of Ogle* (1984), 101 Ill. 2d 413), so the reduced wages for public works in Highland Park could profoundly depress the prevailing wage in Lake County and thereby reduce earnings of workers outside the home rule unit.

Furthermore, the authority of home rule units under section 6(a) is limited in those fields traditionally subject to comprehensive State regulation. (*Kalodimos v. Village*

*of Morton Grove* (1984), 103 Ill. 2d 483, 501.) A relevant example of this limitation upon home rule powers was given by the drafters of section 6(a):

"Home-Rule City adopts an ordinance limiting the rates that may be charged by the telephone company for local calls. Long standing state regulation of utility rates precludes this subject from being considered a matter pertaining to home-rule government and affairs." (7 Record of Proceedings, Sixth Illinois Constitutional Convention 1652.)

The "field" in which Highland Park has regulated by its decision to suspend the prevailing wage law is the promotion of a favorable labor climate through a comprehensive scheme of governmental intervention in the workplace. The prevailing wage law falls within that field since it both mitigates against an impoverished work force and "support[s] the integrity of the collective bargaining process by preventing the undercutting of employee wages in the private construction sector" (*State ex rel. Evans v. Moore* (1982), 69 Ohio St. 2d 88, 91, 431 N.E.2d 311, 313). Establishing minimum requirements to attain those goals and to otherwise improve working conditions has traditionally been a matter of State concern, outside the power of local officials to contradict, and it remains so today.

Statutes enacted by the General Assembly in the discharge of its traditional function in this field—and which are perhaps more pervasive than those governing local telephone rates—include: "An Act making eight hours a legal day's work" (Ill. Rev. Stat. 1985, ch. 48, par. 2 *et seq.*); "An Act to abolish discrimination in the payment of wages between persons performing equal work ***" (Ill. Rev. Stat. 1985, ch. 48, par. 4a *et seq.*); "An Act to promote the public health and comfort of persons employed by providing for one day of rest in seven" (Ill. Rev. Stat. 1985, ch. 48, par. 8a *et seq.*); "An Act to regu-

late the employment of children ***" (Ill. Rev. Stat. 1985, ch. 48, par. 31.1 *et seq.*); the Illinois Wage Assignment Act (Ill. Rev. Stat. 1985, ch. 48, par. 39.01 *et seq.*); the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*); "An Act forbidding employers to require employees or applicants for employment to pay the cost of medical examinations required as a condition of employment" (Ill. Rev. Stat. 1985, ch. 48, par. 172d *et seq.*); "An Act in relation to minimum fair wage standards for women and minors ***" (Ill. Rev. Stat. 1985, ch. 48, par. 198.1 *et seq.*); the Unemployment Insurance Act (Ill. Rev. Stat. 1985, ch. 48, par. 300 *et seq.*); and the Minimum Wage Law (Ill. Rev. Stat. 1985, ch. 48, par. 1001 *et seq.*). Moreover, the advancement of collective bargaining, including collective bargaining by public employees, and the protection of local labor fall within the traditional scope of State labor regulation, as demonstrated by "An Act relating to disputes concerning terms and conditions of employment" (Ill. Rev. Stat. 1985, ch. 48, par. 2a *et seq.*), the Illinois Public Labor Relations Act (Ill. Rev. Stat. 1985, ch. 48, par. 1601 *et seq.*) and "An Act to give preference in the construction of public works projects and improvements to citizens of the United States who have resided in Illinois for one year" (Ill. Rev. Stat. 1985, ch. 48, par. 269 *et seq.*).

Adopting the defendants' definition of home rule authority in this case would put at risk all of the State's labor laws and invite increasingly localized definition of workers' rights. Consistent with the defendants' arguments, home rule units could condone 12-hour work days, suspend minimum-wage requirements and repeal child-labor laws within their jurisdictions. In those cases, as in many others, superseding local regulation would be justified as affecting only local industries and workers. The defendants suggest that Federal law would fill any gaps created by such an abuse of home rule power, but

State laws cover a broader base of employers and often pack their own enforcement provisions. Additionally, we are unwilling to sacrifice State laws in reliance on Federal statutes, which are subject to amendment and repeal without approval by Illinois voters and depend for their enforcement on officials answerable to authorities in Washington, D.C., rather than Springfield.

Were home rule authorities allowed to govern their local labor conditions, the Illinois Constitution's vision of home rule units exercising their powers to solve local problems would be corrupted and that power used to create a confederation of modern feudal estates which, to placate local economic and political expediencies, would in time destroy the General Assembly's carefully crafted and balanced economic policies. It is precisely for this reason, to avoid a chaotic and ultimately ineffective labor policy, that the State has a far more vital interest in regulating labor conditions than do local communities. The disintegration of uniform labor rights and standards under State law would certainly follow the breakup of State monopoly in this field, and it is doubtful whether local units of government could agree upon statewide labor policies that would bring to Illinois the benefits of a well-compensated and skilled labor force.

In accordance with the test set forth in *Kalodimos*, we conclude that Highland Park's attempt to abrogate the prevailing wage law was an act *ultra vires*, being outside the grant of home rule power in article VII, section 6(a), of the 1970 Illinois Constitution. Attempting a geographically selective repeal of the Act affected persons and entities outside Highland Park and intruded into a field traditionally regulated by the State owing to the State's vital interests. Compliance with the Prevailing Wage Act is a matter pertaining to statewide, and decidedly not local, government or affairs.

Durocher maintains that no violation of the Act has taken place because the Department of Labor failed to publish the prevailing rate of wages. In making that argument, Durocher relies on a portion of the Act requiring the Department, "during the month of June of each calendar year, [to] investigate and ascertain the prevailing rate of wages" (Ill. Rev. Stat. 1983, ch. 48, par. 39s—9). That duty was imposed by Public Act 83—201, which took effect in January 1984 and first required the Department's annual investigation in June of that year. All the events at issue in this case antedate the Department's duty to conduct annual surveys, and Durocher has not shown that the city requested an investigation of prevailing wages, which the Department would then have been required to publish. (See Ill. Rev. Stat. 1983, ch. 48, par. 39s—4.) Hence, there is no reason to believe that Durocher's alleged noncompliance with the Act was due to the Department's nonfeasance; instead, the stipulated facts indicate a conscious decision by the city and its contractors to disregard the Prevailing Wage Act.

The judgments of the appellate court and circuit court are reversed, and the cause is remanded to the circuit court of Lake County for further proceedings consistent with this opinion.

*Appellate court reversed;*
*circuit court reversed;*
*cause remanded.*

JUSTICE MILLER, dissenting:

Determining whether the City of Highland Park, a home rule unit of local government, should follow the Prevailing Wage Act (Ill. Rev. Stat. 1985, ch. 48, pars. 39s—1 through 39s—12) in renovating its municipal water-treatment plant is in essence a legislative judgment, and therefore one that is better resolved by the legisla-

tive bodies of this State. For those reasons, I respectfully disagree with the result reached by the majority.

Notably, the Illinois Constitution provides the General Assembly with the tools necessary for preempting home rule activity in this area. The legislators have not acted, however, and our function is not to act for them. Article VII, section 6, of the 1970 Constitution provides, in pertinent part:

> "(g) The General Assembly by a law approved by the vote of three-fifths of the members elected to each house may deny or limit the power to tax and any other power or function of a home rule unit not exercised or performed by the State other than a power or function specified in subsection (*l*) of this Section.
>
> (h) The General Assembly may provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit other than a taxing power or a power or function specified in subsection (*l*) of this section.
>
> (i) Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive." (Ill. Const. 1970, art. VII, §§6(g), (h), (i).)

Sections 6(j) and 6(k) provide similar rules on how the legislature may limit the amount of debt that home rule units may incur; subsection (*l*), referred to in the quoted provisions, pertains to local improvements by special assessment and local taxes for special services and is not relevant here. (Ill. Const. 1970, art. VII, §§6(j), (k), (*l*).) The legislature's readiness to use the preemption provisions in the area of labor law is apparent. For example, the Illinois Public Labor Relations Act (Ill. Rev. Stat. 1985, ch. 48, pars. 1601 through 1627) expressly preempts local activity in that field. See Ill. Rev. Stat. 1985, ch. 48, par. 1615(c).

In usurping the legislature's role, the majority ignores the admonition of Professor David Baum, who served as legal counsel to the committee responsible for drafting the home rule provisions of the current State constitution. Professor Baum believed that a broad preemption rule—like that applied by the majority in this case—was inconsistent with the home rule provisions in article VII, section 6; taken together, sections 6(g), 6(h), and 6(i) provided, in Baum's view, a simple and useful system for resolving conflicts between State statutes and home rule activity. (Baum, *A Tentative Survey of Illinois Home Rule (Part I): Powers & Limitations*, 1972 U. Ill. L.F. 137, 154-55.) He noted that the purpose of the various provisions in section 6 was "to eliminate or at least reduce to a bare minimum the circumstances under which local home rule powers are preempted by judicial interpretation of unexpressed legislative intention." (Baum, *A Tentative Survey of Illinois Home Rule (Part II): Legislative Control, Transition Problems, & Intergovernmental Conflict*, 1972 U. Ill. L.F. 559, 571.) For that reason, Professor Baum believed that the courts should play only a limited role in resolving even direct conflicts between State law and local activity. Discussing possible methods of resolving those conflicts, Professor Baum wrote:

> "One possible approach is to look back to section 6(a) which confines home rule power to matters pertaining to the affairs and government of the home rule unit. Perhaps a court, when faced with unavoidable state-local conflict, should determine whether the subject matter is of statewide importance, or rather pertains to local affairs. If the latter, the home rule unit would prevail; if the former, the state would prevail. The difficulty with this approach is that it is similar to that employed in other states and thus was not favored for Illinois by the drafters of the constitution. Furthermore, it does not take account of the fact that the state legislation always can pre-

vail, if the legislature specifically so provides and thereby complies with section 6(h). Since the state always can vindicate its interests by legislating in the proper form, it seems unwise to sustain state legislation at the expense of home rule ordinances except when a state statute is in the required form or in those few cases where vital state interests would be sacrificed by permitting the local legislation to prevail until the next session of the General Assembly." Baum, *A Tentative Survey of Illinois Home Rule (Part II): Legislative Control, Transition Problems, & Intergovernmental Conflict*, 1972 U. Ill. L.F. 559, 573.

In this case, however, the majority has simply substituted its judgment for that of the legislature, fearing that a decision in favor of home rule authority would affect the calculation of prevailing wage rates for Lake County and would undermine a number of labor laws that are applicable on a statewide basis. The first concern is exaggerated; the second is unfounded.

Highland Park's action here would have only an incidental effect, if any, on the computation of prevailing wage rates for Lake County. The majority's fear in this regard would be realized only if the wages paid on the renovation project here were used in calculating an average of the wages paid on all public works projects in the county. The Act requires that the public body, or the Department, ascertain the prevailing wage rate for the locality but does not specify a particular method for doing so. (See Ill. Rev. Stat. 1985, ch. 48, par. 39s—4.) Thus, it is not clear what effect the wages paid in this case would have on the county's prevailing rate.

Moreover, a decision in favor of home rule authority in this case would not threaten any of the valuable ameliorative labor laws cited by the majority (121 Ill. 2d at 14-15). In sharp contrast to the Prevailing Wage Act, those other labor laws provide a fixed minimum standard applicable throughout the State to all employees in the State. The Prevailing Wage Act is different: it applies

only to projects initiated by public bodies, and the pay rates determined under the Act may vary from locality to locality.

The question presented by this case poses difficult choices for the General Assembly as well as for the home rule units of local government; like all other public bodies, the legislature and the home rule units face competing demands in resolving matters of public policy. Whether home rule units should be required to comply with the Prevailing Wage Act, and, if not, whether they should follow it anyway, is at heart a legislative concern, and therefore one that should be resolved by the General Assembly or, in the absence of statutory preemption, by the home rule units themselves. I do not believe that it is necessary, or advisable, for this court to make that important decision for them. For those reasons, I respectfully dissent.

MORAN, C.J., and RYAN, J., join in this dissent.