CONGRESS CARE CENTER ASSOCIATES, Plaintiff-Appellant, v. THE CHICAGO DEPARTMENT OF HEALTH, Defendant-Appellee.

First District (3rd Division) No. 1—92—2799

Opinion filed March 30, 1994.

Stanley M. Klem, of Chicago, for appellant.

Kelly R. Welsh, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Brian Trubitt, Assistant Corporation Counsel, of counsel), for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff, Congress Care Center Associates, Inc. (Congress), a licensee and operator of a Chicago nursing home, brought this action for administrative review of a decision by defendant, Chicago Department of Health (Department), citing a violation and assessing a fine against Congress pursuant to provisions of the Chicago Nursing Home ordinance (Ordinance) (Chicago Municipal Code §§ 4—96—010 through 4—96—370 (1990)), which the trial court affirmed.

On appeal, Congress argues that the Ordinance exceeds the constitutional limitations on the home rule power of the City of Chicago (Chicago) on grounds that: (1) the State regulatory scheme set out in the Nursing Home Care Act (Act) (Ill. Rev. Stat. 1989, ch. 111½, par. 4151—101 et seq.) preempts local concurrent regulation;

or, alternatively, (2) the Ordinance does not "fully comply" with the Act and thus Chicago cannot assess a penalty against it.

We affirm the trial court.

On August 6, 1990, an inspector from the Department surveyed Congress' nursing home and found two violations of Department regulations: (1) Congress had no written policy showing the duties of nursing staff on the night shift; and (2) Congress had no reports on file of physical examinations of several employees 10 days before or after their first days of employment. Later that month the Department served notice upon Congress of these violations and levied a fine against Congress for $1,000, $500 for each violation.

Congress requested a hearing pursuant to the Ordinance to contest the alleged violations and fine assessment, and filed a motion to dismiss. After a hearing, the hearing officer dismissed one charge because Department regulations did not require written policies detailing duties of the night nursing staff, and upheld the other charge concerning lack of evidence of employees' physical examinations. The Department commissioner adopted the hearing officer's findings and conclusions and reduced Congress' fine to $500.

Congress filed an action for administrative review in the trial court pursuant to the Administrative Review Law (Ill. Rev. Stat. 1991, ch. 110, par. 3—101 et seq.). After hearing and oral argument, the court entered an order finding the Ordinance constitutional and affirming the commissioner's decision.

The Ordinance regulates nursing homes to protect the health and safety of nursing home residents within Chicago boundaries. (Chicago Municipal Code §§ 4—96—010 through 4—96—370 (1990).) Congress recognizes Chicago's interest in regulating nursing homes but contends that the Act preempts municipal regulation of this field. Congress argues that because nursing homes are subject to considerable State regulation, they are of statewide concern; hence, concurrent municipal regulation constitutes an *ultra vires* exercise of home rule power. See, *e.g., People ex rel. Bernardi v. City of Highland Park* (1988), 121 Ill. 2d 1, 16, 520 N.E.2d 316 (home rule unit exceeded constitutional authority to regulate "government or affairs" by refusing to comply with State regulatory scheme regarding wages).

The Illinois Constitution grants Chicago as a home rule municipality the authority to "exercise any power and perform any function pertaining to its government and affairs." (Ill. Const. 1970, art. VII, § 6(a).) This provision was intended to give home rule units the broadest powers possible. *Scadron v. City of Des Plaines* (1992), 153 Ill. 2d 164, 174-75, 606 N.E.2d 1154.

Because the grant of home rule power is broad yet "imprecise,"

courts have a duty to interpret whether any power exercised by a home rule unit exceeds its constitutional limitations. (*Kirwin v. Peoples Gas Light & Coke Co.* (1988), 173 Ill. App. 3d 699, 703, 528 N.E.2d 201 (statute regulating public utilities preempts concurrent local regulation due to State's strong interest in uniform utility laws), citing *Ampersand, Inc. v. Finley* (1975), 61 Ill. 2d 537, 539-40, 338 N.E.2d 15.) In so doing, courts must determine whether the legislature has preempted the area by adopting a scheme of regulation over the subject matter of the legislation involved. (*Kirwin*, 173 Ill. App. 3d at 703.) In the context of State versus local action, "preemption means the end of local legislative control over a given subject where the legislature has adopted a scheme of regulation over the same subject." *Kirwin*, 173 Ill. App. 3d at 703.

Contrary to Congress' contention, home rule units are free to carry on activities that relate to their communities even if the State, is also interested and active in regulating the particular area. (*County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494, 510-11, 389 N.E.2d 553, quoting Baum, *A Tentative Survey of Illinois Home Rule (Part I): Powers and Limitations*, 1972 U. Ill. L.F. 137, 155; see *Scadron*, 153 Ill. 2d at 175.) A municipality's home rule power is preempted by the State under very narrow circumstances:

> " 'Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not *specifically* limit the concurrent exercise or *specifically* declare the State's exercise to be exclusive.' (Emphasis added.)" (*Scadron*, 153 Ill. 2d at 185-86, quoting Ill. Const. 1970, art. VII, § 6(i).)

Section 6(i) thus functions to " 'eliminate or at least reduce to a bare minimum the circumstances under which local home rule powers are preempted by judicial interpretation of unexpressed legislative intention.' " (*Scadron*, 153 Ill. 2d at 185-86, quoting Baum, A Tentative Survey of Illinois Home Rule (Part II): Legislative Control, Transition Problems, and Intergovernmental Conflict, 1972 U. Ill. L.F. 559, 571.) The Illinois approach favors concurrent exercises of power by the State and home rule units and places almost exclusive reliance on the legislature rather than the courts to limit the home rule units' exercise of their authority. *Scadron*, 153 Ill. 2d at 188, quoting 1972 U. Ill. L.F. at 579.

Congress contends that the Act's failure to specifically limit the concurrent exercise of home rule power to regulate nursing homes amounts to legislative oversight. However, it is clear that "[t]he legislature is perfectly capable of being specific when it wants to be." (*Scadron*, 153 Ill. 2d at 188.) Since the legislature has not specifically

limited the power of home rule municipalities in this field, courts should not interfere with the "constitutional design" of the Act to compensate for alleged legislative inaction or perceived oversight absent a clear showing of " 'oppression, injustice, or interference by local ordinances with vital state policies.' " (Emphasis omitted.) *Scadron*, 153 Ill. 2d at 190, quoting 1972 U. Ill. L.F. at 157.

Congress fails to show how the Ordinance suppresses vital State policies concerning nursing home regulation. Chicago has regulated nursing homes continuously since 1917 (see Chicago City Council, Journal of Proceedings, March 12, 1917, at 3762-66), long before State regulation which began in 1945. (See Ill. Rev. Stat. 1945, ch. 111$^1$/$_2$, pars. 35.16 through 35.30.) Then, the General Assembly recognized the local interest in nursing homes by granting municipalities the authority to provide for such regulation. (See Ill. Rev. Stat. 1945, ch. 111$^1$/$_2$, par. 35.30.) The scheme and language of the Act, which begins with a section entitled "Municipalities—Licensing and regulation of facilities," further evince the State's commitment to local concurrent regulation in this field. (Ill. Rev. Stat. 1989, ch. 111$^1$/$_2$, par. 4153—104 *et seq.*) Because the Act contemplates rather than preempts municipal regulation of nursing homes, we affirm the trial court's finding that Chicago's Ordinance is a proper exercise of home rule authority. See *Kalodimos v. Village of Morton Grove* (1984), 103 Ill. 2d 483, 470 N.E.2d 266 (comprehensive statutory scheme of handgun regulation does not evince legislative intent to preclude concurrent local regulation banning handguns); see also *Scadron*, 153 Ill. 2d at 188-89 (sign regulation); *Mulligan v. Dunne* (1975), 61 Ill. 2d 544, 338 N.E.2d 6 (regulation and taxation of liquor); *Peters v. City of Springfield* (1974), 57 Ill. 2d 142, 311 N.E.2d 107 (civil pension regulations).

Congress alternatively argues that the Department lacked authority to assess a penalty for the violation regarding the lack of evidence of employee physical examinations because this requirement does not comport with the legislative limitation that municipal licensing and enforcement provisions "fully comply" with State legislation. (Ill. Rev. Stat. 1989, ch. 111$^1$/$_2$, par. 4153—104.) The Ordinance provides that a nursing home operator cited for the violation at issue:

> "[I]s subject to a penalty computed at a rate of $1.50 per resident in the facility plus $.05 per resident for each day of the violation, commencing on the date the violation is discovered and ending on the date the violation is corrected, or a fine of not less than $500.00, which ever is greater." (Chicago Municipal Code § 4—96—300(a)(3) (1990).)

Congress' argument is misplaced. Allowing the words "fully comply" their plain and ordinary meaning (*Scadron*, 153 Ill. 2d at 185), the Act requires a municipal ordinance to follow to the greatest degree the licensing and enforcement provisions established by the State which include adopting similar licensing classifications (Ill. Rev. Stat. 1989, ch. 111$^1$/$_2$, par. 4153—205), and allowing nursing homes at least 60 days to comply with more stringent local regulations. Ill. Rev. Stat. 1989, ch. 111$^1$/$_2$, par. 4153—106.

An examination of the Ordinance and the Act reveals that Chicago has fulfilled its responsibility to "fully comply" with State legislation. The Ordinance meets the licensing classifications contained in the Act although it covers some facilities (*e.g.*, "residential care (half-way) homes") not specifically covered by the State statute. (Compare Chicago Municipal Code § 4—96—010 (1990), with Ill. Rev. Stat. 1989, ch. 111$^1$/$_2$, pars. 4181 through 4197.) Absent an express statement by the State to the contrary, a municipal ordinance may "fully comply" with the Act even though more restrictive in its application. *Universal Outdoor, Inc. v. Village of Elk Grove* (1990), 194 Ill. App. 3d 303, 308, 550 N.E.2d 1254; *City of Evanston v. Create, Inc.* (1981), 85 Ill. 2d 101, 107, 421 N.E.2d 196; see also *Scadron*, 153 Ill. 2d at 194.

The Ordinance's enforcement provisions, including the penalty which Congress now contests, similarly comply with the Act to support the compelling interest of attempting to prevent the transmission of communicable diseases from nursing home employees to nursing home residents. Clearly, Chicago's interest does not represent a case of "oppression, injustice, or interference" (emphasis omitted) with vital State policy to warrant judicial preemption. See *Scadron*, 153 Ill. 2d at 190.

Moreover, the Ordinance satisfies the requirement of allowing nursing homes at least 60 days to comply with local regulations more stringent than those provided in the Act. (See Ill. Rev. Stat. 1989, ch. 111$^1$/$_2$, par. 4153—106.) Section 4—96—280(d) of the Ordinance allows Congress as a nursing home operator to prepare and submit a plan of correction 20 days after receiving notice of the violation at issue:

> "The commissioner may extend this period up to 30 days where correction involves substantial capital improvement. The plan shall include a fixed time period not in excess of 90 days within which violations are to be corrected." (Chicago Municipal Code § 4—96—280(d) (1990).)

If the nursing home operator's plan of correction is approved and carried out, "no penalty may be assessed on the violation during the time period specified in the approved plan of correction." Chicago Municipal Code § 4—96—300(d) (1990).

Although Congress contends that the grace period begins to run when the violation is discovered, the language of the Ordinance clarifies that the grace period commences after the correction plan has been approved and for so long as the plan is "carried out" toward rectifying the cited violation. Chicago Municipal Code § 4—96—300(d) (1990).

For these reasons, we find that the Ordinance is not an impermissible exercise of home rule power and does not do offense to the requirement that local ordinances "fully comply" with the State's Nursing Home Care Act.

Affirmed.

TULLY, P.J., and RIZZI, J., concur.